

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| NATHAN HAMPTON, ) | |
| ) | |
| Plaintiff, ) | No. 09 C 4822 |
| ) | |
| v. ) | The Honorable William J. Hibbler |
| ) | |
| CITY OF CHICAGO, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff brings this suit against his former employer, Defendant City of Chicago, alleging violations of Title VII of the Civil Rights Act, 42 U.S.C. § 2000e. He claims the City unlawfully retaliated against him for engaging in protected conduct by disciplining him and forcing his resignation. He also originally claimed that the City engaged in sex discrimination and set forth a hostile work environment claim, but he no longer seems to be pursuing those claims, as explained below. The City now moves for summary judgment on Hampton's claims. For the reasons set forth below, the Court GRANTS Defendant's motion.

## I. Factual Background

The following relevant facts are undisputed, unless otherwise specified.

Nathan Hampton worked for the City's Department of Streets and Sanitation as a Career Service laborer from April 16, 1990, until his resignation on February 16, 2006. (Def. Rule 56.1(a)(3) Statement (hereinafter "Def. St.") ¶¶ 1 & 24.)

According to the City's Personnel Rules, whenever disciplinary action is recommended against a Career Service laborer, except in the case of an oral reprimand, the laborer must be provided, in writing, on a timely basis, a description of and cause for the disciplinary action.

1

(Def. St. ¶ 14.) A Career Service laborer can be discharged, demoted, or suspended for more than thirty days only by the Commissioner of the Department. Before taking any such action, the City's Departments of Law and Personnel must review the statement of charges and explanation of evidence before they are issued to the laborer, and the laborer must be given an opportunity to review and to respond in writing to the charges. The Commissioner, or the Commissioner's delegated representative, must review any written response submitted by the Career Service laborer before making a final decision. (Def. St. ¶ 15.) The Commissioner can only terminate a Career Service laborer for just cause. (Def. St. ¶ 16.) If a Career Service laborer is discharged, demoted, or suspended for more than thirty days by the Commission, he or she has the right to appeal the decision to the City's Personnel Board. (Def. St. ¶ 15.)

Gloria Pittman was the Fifth Ward Superintendent during the relevant time period, and was therefore the superintendent above Hampton in the Department's hierarchy while he worked in the Fifth Ward, from sometime after September 8, 2004, until the end of 2005. (Def. St. ¶¶ 9, 30-31, & 35.)

Plaintiff claims that once in July 2004, while at a lounge, Pittman asked him, "When are we going to bed together?" In response, Hampton said, "Never, because I have a girlfriend." That was the only conduct Plaintiff believes was sexually harassing. (Def. St. ¶ 57.) Plaintiff only told a fellow laborer, Kimberly Kidd, about the encounter. (Def. St. ¶¶ 54 & 58.)

In order to initiate disciplinary action, other than an oral reprimand, a Ward Superintendent had to complete four carbon copies of a disciplinary notice form, stating the conduct that prompted the recommendation for disciplinary action and citing the Personnel Rules that the Career Service laborer was charged with violating. A copy of the notice would be given to the Career Service laborer along with a form allowing the laborer to reject the proposed

disciplinary action and to request a review of the proposed disciplinary action before the Department's hearing officer. A Career Service laborer could obtain review of the proposed disciplinary action by filling out the form that accompanied the notice. (Def. St. ¶ 18.) A copy of the notice would also be sent to the Division Superintendent, who would review the notice and then send it downtown to be reviewed by the General Superintendent of the Bureau's Administrative Section. The General Superintendent would then forward the notice to the Department's hearing officer if the laborer requests a review of the notice. (Def. St. ¶ 20.) At such a hearing, the Career Service laborer would have the opportunity to respond to the charges. At the conclusion of the hearing, the hearing officer would decide whether to accept, reject, or modify the proposed disciplinary action. (Def. St. ¶ 21.)

From November 1999 to July 2005, Hampton was written up at least four times for discipline. (Def. St. ¶¶ 25-27, 31-32.) Hampton claims at one point in his response to the City's statement of facts that he was only written up twice, but he separately admits to being written up on four separate occasions. (Pl. Resp. to Def. St. (hereinafter "Pl. Resp.") ¶¶ 25-27, 31-32.) Only two of those occasions are relevant to this case.

On July 21, 2005, after Hampton transferred to the Fifth Ward, Pittman drafted a notice claiming that Hampton cursed at her, insulted her, and refused to carry out a directive she gave him. The notice charged Hampton with "discourteous treatment," "insubordinate actions," "violating any departmental regulations, rules or procedures," and "conduct unbecoming an officer or public employee." Pittman recommended that Hampton be suspended for 21 days. (Def. St. ¶ 31.)

On July 22, 2005, Pittman drafted a notice claiming that plaintiff had a record of excessive absenteeism. She recommended that Hampton be suspended for 5 days for that alleged violation. (Def. St. ¶ 32.)

Hampton claims that all of the allegations underlying the two notices drafted by Pittman were false. (Pl. Resp. ¶ 32.) After receiving notice of the charges and his rights, Hampton requested a hearing regarding the charges. (Def. St. ¶¶ 33-34.) The hearing was held on August 18, 2005. At the hearing, Hampton, who was represented by his union representative, had the opportunity to respond to the charges and present evidence. Following the hearing, he agreed to take a 15-day suspension, which he served from December 4, 2005 to December 19, 2005. (Def. St. ¶ 34.)

At the end of 2005, Hampton requested, and was granted, a transfer to the Seventeenth Ward. (Def. St. ¶ 35.) On January 9, 2006, Pittman filed a Violence in the Workplace complaint against Hampton, claiming that on January 6, 2006, she received two threatening voice mail messages on her personal cell phone from Hampton. (Def. St. ¶¶ 36 & 38.) Hampton denies leaving any voice mail messages on Pittman's phone and denies threatening her. (Pl. Resp. ¶ 36.)

On January 9, 2006, the Commissioner of the Department placed Hampton on paid administrative leave. (Def. St. ¶ 39.) After reviewing the charges, the City's Law Department determined that Hampton's conduct violated the City's Personnel Rules and drafted a statement of charges and explanation of evidence to be presented to Hampton. (Def. St. ¶ 40.) On February 9, 2006, Hampton met with his union representative and the Assistant Commissioner of the Streets and Sanitation Legal and Labor Relations Section. (Def. St. ¶ 41.) The City claims that the Assistant Commissioner provided Hampton with the Statement of Charges and

4

Explanation of Evidence against him at that meeting, but Hampton claims he did not receive the document until about a week later. (Def. St. ¶ 41; Pl. Resp. ¶ 41.) While the City claims that Hampton's claim contradicts his deposition testimony, the testimony the City references actually seems to refer to the notice of the February 9 meeting, not the Statement of Charges. (Def. St. Ex. A at pp. 151-52 & Ex. 23.) Thus, there is a dispute as to when Hampton received a copy of the charges. He also disputes whether he was notified at the meeting that he would have an opportunity to respond to the charges. (Pl. Resp. ¶ 44.) The last paragraph of the Statement of Charges stated:

> If you desire to respond to or explain the foregoing, you must deliver a written statement containing all matters you desire to be taken into consideration to [the Commissioner's office]...**no later than 5:00 p.m., February 16, 2006.**

(Def. St. ¶ 43 (emphasis in original).)

At some point after the meeting, but before February 16, Hampton conferred with the union attorney. (Def. St. ¶ 45; Pl. Resp. ¶ 45.) He claims that the union attorney told him that he would be fired no matter how he responded to the charges. (Pl. Resp. ¶ 45.)

On February 16, 2006, Hampton tendered his resignation to the City, effective the same day. (Def. St. ¶ 46.)

## II. Standard of review

Summary judgment is appropriate when the "pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party bears the initial burden of demonstrating there is no genuine issue of material fact, and judgment as a matter of law should be granted in their favor. *Id.* Once the moving party has met the initial burden, the non-moving party must offer more than a mere scintilla of evidence to

survive summary judgment. *Roger Whitmore's Auto. Servs. v. Lake County, Ill.*, 424 F.3d 659, 667 (7th Cir. 2005). The non-moving party must produce specific facts showing there is a genuine issue of material fact, and that the moving party is not entitled to judgment as a matter of law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). Finally, all evidence and inferences must be viewed in the light most favorable to the non-moving party. *Id.* at 255.

## III. Analysis

### A. Sexual harassment and sex discrimination

While Hampton originally claimed in his complaint that he suffered sex discrimination and a hostile working environment, he no longer seems to be pursuing those claims. He expressly denies that he claims discrimination on the basis of sex in his response to Defendant's Statement of Facts. (Pl. Resp. ¶ 49.) He also fails to make any argument regarding his hostile working environment claim. However, even if he did wish to pursue his hostile working environment claim, he admits that the only alleged harassment he encountered was Pittman's alleged proposition in July 2004. Thus, even if that single event could provide a basis for his hostile working environment claim, the claim would be untimely because he filed his Illinois Department of Human Rights (IDHR) complaint more than three hundred days after the only alleged incident. *Filipovic v. K & R Express Sys., Inc.*, 176 F.3d 390, 396 (7th Cir. 1999); *see also* 42 U.S.C. § 2000e-5(e)(1). Thus, the Court grants Defendant's motion as to these two claims.

### B. Retaliation

The only claim Hampton still pursues is his claim of retaliation. A plaintiff in a Title VII action claiming retaliation for engaging in a protected activity can prove his claim by one of two

methods, commonly referred to as the direct and indirect methods. *Silverman v. Bd. of Educ. of City of Chicago*, 637 F.3d 729, 740 (7th Cir. 2011). Under the indirect method, however, one of the elements Hampton must prove is that he was treated differently than similarly situated employees who did not engage in protected activity. *Id.* at 742. Hampton has provided no evidence to support such a finding. Thus, he may only proceed under the direct method. Under the direct method, "a plaintiff must show: (1) that [he] engaged in statutorily protected activity; (2) [he] suffered an adverse action taken by the employer; and (3) there was a causal connection between the two." *Id.* at 740.

Hampton's claim is that Pittman lied about his conduct in order to get him suspended, and ultimately fired, because she was upset that he rejected her sexual advances in July 2004. He argues that while he was not ultimately fired, he was forced into an untenable position where he had no choice but to resign. The City argues that Hampton fails to meet any of the three required elements under the direct method of proof. However, the Court need not address the first two factors, because it is clear that Hampton is unable to meet the third.

Hampton concedes that Pittman did not have the power to make the ultimate decision about whether to discipline or fire him. He admits that the decision to suspend him was made by a hearing officer after he had the chance to defend himself, that the decision to charge him in February 2009 was made by the Law Department, and that the final decision about whether to fire him would have been made by the Commissioner after a hearing. He also admits that the only person he told about Pittman's sexual advance was another laborer. He provides no evidence that anyone else knew about the encounter besides him and Pittman. Thus, only Pittman could have retaliated against him. Indeed, he only seems to claim that Pittman retaliated against him.

Pittman's limited power to act on her own to discipline or fire Hampton does not doom his claim, however. The Seventh Circuit has held that under some circumstances where an employee "without formal authority to materially alter the terms and conditions of a plaintiff's employment," such as Pittman, "nonetheless uses her 'singular influence' over an employee who does have such power to harm the plaintiff for [impermissibly discriminatory] reasons, the actions of the employee without formal authority are imputed to the employer and the employer is in violation of Title VII." *Brewer v. Bd. of Trustees of Univ. of Ill.*, 479 F.3d 908, 917 (7th Cir. 2007). Furthermore, "[i]n some situations, the influence can be exercised by supplying misinformation or failing to provide relevant information to the person making the employment decision." *Id.*

However, in order to succeed on such a claim, Hampton must prove that Pittman had so much influence over the decision as to "basically be...the true functional decision-maker." *Id.* (internal quotations, ellipses, and brackets omitted). The nominal decision-maker must be nothing more than the functional decision-maker's "cat's paw." *Id.* at 917-918. Thus, the City can avoid liability by showing that the decision was not wholly dependent on the information supplied or withheld by Pittman because it conducted an independent investigation into the facts. *Id.* at 918. The City has done just that. Hampton concedes that the City followed procedures that allowed him to contest Pittman's charges in writing and in hearings. He does not claim or provide evidence that those hearings were futile or meaningless, only that the union attorney seemed to think so.[1] It is true that the City may have only been able to weigh Pittman's word against Hampton's, and Hampton may believe he was harmed by Pittman's lies. But, the Seventh Circuit has held that "[e]ven though the employer in such situations must often decide what to do based on nothing more than the conflicting stories of two different employees, the

---

[1] Of course, the union attorney's thoughts are not only irrelevant, but inadmissible hearsay.

8

employer will not be liable for the [discriminatory actions] of the alleged frame-up artist so long as it independently considers both stories." *Id.* Because Hampton provides no evidence that the City failed to do just that, he cannot prevail under the direct method. There is no way he can prove that the City's allegedly adverse employment actions were caused by Pittman's discrimination.

## *CONCLUSION*

For the above reasons, the Court GRANTS Defendant's motion for summary judgment.

IT IS SO ORDERED.

_8/5/11_
Dated

Hon. William J. Hibbler
United States District Court